# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

| | | |
|---|---|---|
| **VALERIY JIGLOV,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09-2319-STA-cgc** |
| | ) | |
| **HOTEL PEABODY, G.P., d/b/a** | ) | |
| **MEMPHIS PEABODY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## ORDER GRANTING IN PART, DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant's Motion for Summary Judgment (D.E. # 18) filed on April 1, 2010.  Plaintiff has responded in opposition to Defendants' Motion.  For the reasons set forth below, the Motion is **GRANTED IN PART, DENIED IN PART**.

## BACKGROUND

The following facts are not in dispute for purposes of this Motion unless otherwise noted. The Peabody hired Plaintiff Valeriy Jiglov to work as a kitchen mechanic on January 24, 2007. (Def.'s Statement of Undisputed Facts ¶ 1).  In that position, Plaintiff was responsible for the maintenance and repair of essential pieces of equipment in each of the hotel's five kitchens, including their ovens, refrigerators, gas lines, dishwashers, and walk-in freezers.  (*Id.*).  Tony Underhill was the only other kitchen mechanic at the Peabody during Plaintiff's employment. (*Id.* ¶ 2). During the week, both Plaintiff's and Mr. Underhill's shift began at 8:00 A.M. and

1

ended at 4:30 P.M. each day.  (*Id.*).  Plaintiff worked Sunday through Thursday, and Mr.

Underhill worked Tuesday through Saturday.  (*Id.*).  Because of the Peabody's brunch service,

Sunday is a very busy day at the hotel, especially for its kitchen and dining personnel.  (*Id.* ¶ 3).

      At the beginning of his employment, Plaintiff underwent training and orientation on the

Peabody's employment policies and procedures, which included the hotel's Associates

Guidelines.  (*Id.* ¶ 4).  At the conclusion of orientation, he acknowledged his receipt and

understanding of the Associate Guidelines and the other employment policies of the hotel. (*Id.*).

The Associate Guidelines include numerous expectations regarding employee conduct, including

the heightened importance of employee work schedules given the hotel's year-round, 24-7

operations, as well as the Peabody's work conduct rules. (*Id.* ¶ 5).  The Associate Guidelines do

not outline a progressive discipline policy, but rather provide that the Peabody will determine

corrective action on a case-by-case basis and will issue whatever discipline is necessary under the

circumstances.  (*Id.*).  Plaintiff disputes the assertion that the Associate Guidelines do not outline

a mandatory progressive discipline policy.  The Peabody also maintains an Associate Conduct

Policy in its Human Resources manual, which explains that "disciplinary. . . actions will be

determined on an individual basis and in proportion to the frequency and severity of the

offense(s)."  (*Id.* ¶ 6).

      Throughout his employment, Plaintiff's supervisor was Bill Strange, the Peabody's Chief

Assistant Engineer.  (*Id.* ¶ 7).  His other supervisors included Floyd Goodwin, Chief Engineer of

the hotel, and Terry McNutt, the Director of Engineering.  (*Id.*).

      Plaintiff is a Russian Orthodox Christian, and he attends Saint Seraphim Orthodox

Church in Memphis, Tennessee. (*Id.* ¶ 8a).[1]  The Orthodox Church follows a slightly different calendar than other Christian churches, meaning that certain holidays, such as Easter, will sometimes fall on different days than for other Christians. (*Id.*).  Orthodox Easter services at Plaintiff's church begin late at night on Easter Saturday and last through midnight and the early morning hours of Easter Sunday. (*Id.* ¶ 8b).  These services customarily end at approximately 3:45 A.M. (*Id.*).  Plaintiff and other members of his church generally spend the remainder of Easter Sunday at home, eating and spending time with their friends and family. (*Id.*).  Plaintiff adds that spending time at home with family is as important to the Russian Orthodox observance of Easter as the church services. (*Id.*).  If the weather permits, some of members will return to the church later in the day for an Easter egg hunt with their children. (*Id.*).  There is no religious obligation for Orthodox Christians to refrain from work altogether on Orthodox Easter. (*Id.* ¶ 9).

In 2007, Orthodox Eastern and Western Easter fell on the same Sunday. (*Id.* ¶ 10).  At Plaintiff's request, Mr. Underhill agreed to swap shifts with him so that Plaintiff could have all of Easter Sunday off work. (*Id.*).  Plaintiff's supervisor Bill Strange approved their arrangement because it did not conflict with the hotel's operations. (*Id.*).

In 2008, Plaintiff wanted Mr. Underhill to cover his shift again for Orthodox Easter, which fell on April 27 that year. (*Id.* ¶ 11).  On April 22, 2008, Plaintiff met with Mr. Strange to request approval to have Mr. Underhill cover Plaintiff's shift on April 27, 2008. (*Id.* ¶ 12).  A contractor for the Peabody was scheduled to install a seismic valve for the hotel's gas lines late on Saturday night, April 26, 2008, and the installation was to last until the early morning hours of

---

[1] Defendant's Statement of Undisputed Facts actually has two separate paragraphs numbered 8.  For the sake of clarity, the Court will refer to them as 8a and 8b.

Sunday, April 27. (*Id.* ¶ 13).  Mr. Underhill was scheduled to work a special late shift to cover the installation, in order to supervise the project and relight the pilot light for the hotel's gas lines. (*Id.*).  The extra shift was to last from approximately midnight until 3:00 A.M., April 27, 2008. (*Id.*).

Mr. Strange explained at their April 22 meeting that he could not allow Mr. Underhill to cover Plaintiff's shift on April 27, 2008, as doing so would require Mr. Underhill to come back to the hotel for a busy Sunday shift just hours after completing the late night valve installation. (*Id.* ¶ 14).  Plaintiff later discussed his request with the Chief Engineer of the hotel, Floyd Goodwin.  (*Id.* ¶ 15).  Mr. Goodwin also told Plaintiff about the valve installation and the hotel's inability to let Mr. Underhill cover for him.  (*Id.*)  Mr. Goodwin also noted that Plaintiff could still attend either midnight mass before his shift or evening services after it had ended.  (*Id.*).

Throughout these meetings and the remainder of the week before April 27, 2008, Plaintiff reiterated that he was not going to come to work on April 27.  (*Id.* ¶ 16).  Terry McNutt, Director of Engineering for the hotel, met with Plaintiff on April 24, 2008 to discuss the reasons why he could not have April 27 off work and to clarify the consequences if he did not show up for his shift.  (*Id.* ¶ 17).  He explained that corrective action, up to and including termination, would result, if Plaintiff did not come to work on Sunday, April 27, 2008.  (*Id.*).

The hotel's valve installation project was belatedly and unexpectedly cancelled.  (*Id.* ¶ 18).  Accordingly, Mr. Underhill learned on Saturday, April 26, 2008 that he did not have to come to work to cover the installation that night.  (*Id.*).  Plaintiff disputes this statement arguing that Mr. Underhill actually testified that he did not remember when he was notified about the cancellation.

4

Plaintiff attended the religious services held at his church both on Saturday night, April 26, and early Sunday morning, April 27, in observance of Orthodox Easter. (*Id.* ¶ 19). Those services concluded hours before 8:00 A.M. on April 27, 2008. (*Id.*). At approximately 3:45 A.M. on Sunday, April 27, 2008, following the conclusion of Saint Seraphim's midnight Easter service, Plaintiff called Mr. Strange to report that he was not coming to work that day. (*Id.* ¶ 20). After learning that Plaintiff refused to come to work, Mr. Strange contacted Mr. Underhill at 6:00 A.M. on Sunday morning, April 27, 2008, to ask him to cover Plaintiff's shift. (*Id.* ¶ 21). Mr. Underhill agreed. (*Id.*).

On April 30, 2008, the Peabody terminated Plaintiff's employment for refusing to come to work on April 27 after his supervisors had denied his request to have the day off. (*Id.* ¶ 22). Plaintiff disputes the assertion that he was terminated for not coming to work on April 27, 2008. The Peabody believed that Plaintiff's conduct, specifically his decision to ignore his supervisors' instructions, amounted to gross misconduct under the hotel's employment policies and that this justified his immediate termination. (*Id.*).

Antoinette Anderson and Cindy Cobb are the only other associates at the Peabody since 2006 to have engaged in the same misconduct as Plaintiff. (*Id.* ¶ 23). Like him, they both called off work after having their requests for days off specifically denied by their supervisors. (*Id.*). Their employment was accordingly terminated for refusing to come to work as their supervisors had instructed. (*Id.*). Plaintiff disputes this statement and contends that these employees were repeatedly warned about attendance and had had numerous absences prior to their terminations. Plaintiff also cites additional evidence about the progressive discipline Anderson and Cobb received prior to termination.

5

Plaintiff has alleged that the Peabody violated Title VII by not reasonably accommodating his religion and by treating him differently than other employees who do not share his religion or nationality.  In its Motion for Summary Judgment, Defendant argues that Plaintiff has failed to adduce evidence to make either of these showings.  Plaintiff cannot show that his shift on April 27, 2008 conflicted with any of his religious observances.  Defendant contends that Plaintiff preferred to have the entire day off to spend it with his family in observance of Orthodox Easter; however, his preference to be off work was not an actual religious requirement such as a Sabbath observance.  For that reason Plaintiff cannot make out a prima facie case of religious discrimination.

Even if Plaintiff could make this showing, Defendant argues that accommodating Plaintiff's religious requirement to have the entire day off would have created an undue hardship for the hotel.  An employer is not required to make a religious accommodation, for example, if the accommodation would result in decreased efficiency, increased operating costs, additional burdens on other employees, or "premium compensation."  In this case, the undue burden would have arisen by requiring Underhill to work his regularly-scheduled Saturday shift, return for the special installation of the valve at midnight Saturday night, and then come in to cover Plaintiff's Sunday shift at 6:00 A.M.  Defendant would have owed Underhill overtime compensation, and Underhill would have been required to work almost twenty hours from Saturday morning until Sunday afternoon.  While admitting that it may have been able to accommodate Plaintiff if the valve project had been cancelled sooner, Defendant argues that the last-minute cancellation was not reasonably foreseeable.  Thus, Defendant is entitled to summary judgment on Plaintiff's religious discrimination claim.

6

Defendant further contends that it made the decision to discharge Plaintiff in the same manner it would have for any employee, and so Plaintiff cannot make out his prima facie claim for disparate treatment.  First, Defendant's decision to deny Plaintiff's request for the day off was not an adverse employment action as a matter of law.  Second, Plaintiff cannot show that Defendant treated his request for time off differently than it would have any other employee's request for time off.  The same supervisor who approved the Orthodox Easter shift swap in 2007 denied Plaintiff's similar request in 2008.  Third, Plaintiff cannot prove that his religion was a factor in his termination.  Defendant dismissed Plaintiff for gross misconduct, namely, Plaintiff's openly stated intention not to come to work on the day in question even after his request for the day off was denied and even though he was told that failure to report to work would be grounds for termination.  Defendant compares its decision to terminate Plaintiff to its termination of Anderson and Cobb, two other employees who refused to report for work after having a request for time off denied.  Based on those comparators, Plaintiff cannot prove disparate treatment or in the alternative that Defendant's proffered reason is pretext for discrimination.  Therefore, Plaintiff's disparate treatment claim should be dismissed.

Plaintiff has responded in opposition to Defendant's Motion.  First, Plaintiff argues that Defendant cannot claim an undue hardship in this case because the hotel's concern about Underhill covering the shift was moot after the installation was cancelled.  At that point, Underhill could have worked Plaintiff's Sunday without burdening Defendant.  Defendant has further failed to show that it pursued all available options to accommodate Plaintiff's request for the day off.  Plaintiff argues that the matter of whether Defendant could have accommodated Plaintiff is after all a question of fact for the jury.  As for Plaintiff's disparate treatment claim,

Plaintiff argues that he can make out his prima facie case and that Anderson and Cobb, the similarly situated employees Defendant cites, received progressive discipline for their attendance problems; whereas, here Plaintiff was dismissed after one absence.  Based on the more extensive disciplinary records of these employees, Plaintiff contends that Defendant cannot show that their conduct was sufficiently similar to Plaintiff's.  As a result, Defendant cannot meet its burden to articulate a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff's employment.  Therefore, Plaintiff argues that Defendant's Motion should be denied in its entirety.

Defendant has filed a reply brief.  Defendant reiterates its argument that Plaintiff has failed to show that his regularly-scheduled shift on Easter Sunday conflicted with the services at his church and for this reason Plaintiff cannot make out his prima facie case for religious discrimination.  Plaintiff has averred in response to Defendant's Motion that his observance of Orthodox Easter extended beyond the church service to eating a holiday meal and having prayer with his family.  Defendant contends that Plaintiff's insistence on sharing the meal and praying with his family can only be described as a preference, not a requirement.  Even if these activities were religious requirements, Plaintiff still could have participated in them as his Sunday shift ended at 4:30 P.M.  Additionally, Plaintiff never mentioned these reasons to his supervisors at the hotel but insisted only that he have the entire day off.  As for Plaintiff's argument that Defendant could have accommodated his request when the installation project was cancelled, Defendant responds that it would not have been reasonable to contact Plaintiff at the eleventh

hour and then arrange for Underhill to cover the shift on such short notice.[2]

Turning again to Plaintiff's disparate treatment claim, Defendant contends that Plaintiff has failed to prove that he was treated differently from similarly situated employees. Defendant argues that Plaintiff cannot rely on Anderson and Cobb because both of those employees worked in different positions and had different supervisors. Therefore, Plaintiff cannot show that he was treated differently than similarly situated employees. Likewise, he cannot prove that Defendant's proffered reason for his termination is pretext for discrimination. Even if the Court found that these employees were comparators, their disciplinary records indicate that they engaged in conduct very different from the conduct in which Plaintiff engaged. Defendant admits that Anderson and Cobb were given multiple warnings prior to their terminations. However, they received warnings for tardiness and other attendance problems. Plaintiff had no history of such problems. Rather Plaintiff was dismissed for the same offenses as these two other employees, namely refusing to work his shift after a supervisor had denied his request to have the day off. Defendant argues then that Plaintiff received the same treatment for the same offense as these two comparators and cannot show disparate treatment. For these reasons, Defendant is entitled to summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[2] Defendant also appears to argue that it could not have contacted Plaintiff because he was attending his church services at the time. The Court finds that the record does not actually indicate when Defendant learned that the installation project was cancelled. Therefore, this assertion is not supported in the record.

9

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[3]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[4]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[6]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[7]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[8]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  In this Circuit, "this requires the nonmoving party

---

[3] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Celotex*, 477 U.S. at 324.

[6] *Matsushita*, 475 U.S. at 586.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8] *Id*. at 251-52 (1989).

[9] *Celotex*, 477 U.S. at 322.

to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[10]  Finally, the

"judge may not make credibility determinations or weigh the evidence."[11]  Under Federal Rule of

Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."[12]

## ANALYSIS

Plaintiff argues that Defendant violated Title VII by failing to offer a reasonable

accommodation for his religious observance of Easter and by treating him differently than other

similarly situated employees on the basis of religion.  The Court will analyze each theory

separately.

## I.      Reasonable Accommodation

Title VII makes in unlawful to discriminate against an employee on the basis of religion.[13]

The Act broadly defines "religion" to mean "all aspects of religious observance and practice, as

well as belief."[14]  "The analysis of any religious accommodation case begins with the question of

whether the employee has established a prima facie case of religious discrimination."[15]  In order

to establish a prima facie case, a plaintiff must show that (1) he holds a sincere religious belief

---

[10] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[11] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[12] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[13] 42 U.S.C. § 2000e-2(a).

[14] § 2000e-2(j).

[15] *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir. 1987), *cert. denied,* 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988).

that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement.[16]  Once an employee has established a prima facie case, the burden shifts to the employer "to show that it could not reasonably accommodate the employee without undue hardship."[17]  For purposes of a religious accommodation, "[t]o require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship."[18]

### A.      *Plaintiff's Sincere Religious Beliefs Conflicted With His Job Requirements*

The Court holds that for purposes of this Motion, Plaintiff can make out the prima facie case for his religious accommodation claim.  First, Plaintiff has shown that he holds a sincere religious belief that conflicted with an employment requirement.  Plaintiff is a member of the Russian Orthodox Church and requested to take off Sunday, April 27, 2008, to observe the Easter holiday.  Plaintiff was scheduled to work his regular Sunday shift for Defendant on that day. Plaintiff has adduced evidence that the "Russian Orthodox Easter extends from a midnight mass on Sunday morning to the end of the day on Sunday" including a special meal shared with family and blessed by the priest.[19]  Plaintiff also avers that "it would have been a violation of my sincerely held religious beliefs to have missed this time of prayer and celebration with my family

---

[16] *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007); *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 627-28 (6th Cir. 2000).

[17] *Tepper*, 505 F.3d at 514 (citations omitted).

[18] *Id*. (citations omitted).

[19] Jiglov Aff. ¶ 6.

to work on the Russian Orthodox Easter."[20]  Viewing this evidence in the light most favorable to

Plaintiff, the Court finds that Plaintiff has satisfied the first element of his prima facie case that

he holds a sincere religious belief that conflicted with an employment requirement.

Defendant argues that Plaintiff's request to take the entire day off amounts to a personal

preference, not a religious requirement, primarily because Plaintiff's shift did not conflict with

any of his religious observances.  Defendant places particular emphasis on the fact that

Plaintiff's shift did not conflict with the midnight Easter services at his church.  Defendant

contends that Plaintiff simply preferred to have the day off rather than having the Easter meal and

other observances with his family after his shift was over.  Defendant argues that the hotel was

not required to accommodate Plaintiff's personal preferences.[21]  The Court finds Defendant's

argument unconvincing.  First, at the time that Defendant denied Plaintiff his day off, there is no

evidence that Defendant actually knew that the primary Easter service at Plaintiff's Russian

---

[20] *Id*. ¶ 7.

[21] Defendant has correctly cited a number of cases for the proposition that an employee's
personal preference is not entitled to reasonable accommodation.  The Court would simply
note that the cases Defendant cites actually describe two distinct types of personal preference.  One
class of cases involves an employee's preferred time, place, and manner of exercising his
religious rights.  The Court finds that the case at bar falls into this category.  The second class of
personal preference cases involve an employee's preferred accommodation from the employer
where more than one accommodation was possible.  *E.g. Ansonia Bd. of Educ. v. Philbrook*, 479
U.S. 60, 68, 107 S.Ct. 367 (1986) (rejecting Court of Appeals' conclusion that "the
accommodation obligation includes a duty to accept the proposal the employee prefers unless
that accommodation causes undue hardship on the employer's conduct of his business");
*Creusere v. Bd. of Educ. of City School Dist. of City of Cincinnati*, 88 F. App'x 813, 819 (6th
Cir. 2003) ("An employer only needs to make reasonable accommodations for an employee's
religion. This principle does not require the employer to accommodate the employee in the way
the employee finds to be the most desirable.").  The Court finds that the second category is not
relevant to the case at bar because there is no evidence that more than one accommodation for
Plaintiff was ever proposed or considered.

Orthodox church was a midnight mass that was over before Plaintiff's Sunday shift began or consequently that Plaintiff's Sunday shift did not conflict with his Easter service.[22]  On the contrary, Defendant arguably assumed that Plaintiff's coincided with his church's principal Easter service.  The hotel's Chief Engineer, Floyd Goodwin, denied Plaintiff's request and suggested that Plaintiff attend "midnight mass before his shift began on Sunday or evening services after it had ended."[23]  Viewing this remark in a light most favorable to Plaintiff, Goodwin assumed that Plaintiff's shift would conflict with his Sunday morning service and urged Plaintiff to attend an alternative service.  Goodwin did not state that he had specific knowledge of the services at Plaintiff's church or that the midnight service was the principal Easter observance for Plaintiff.  A reasonable juror could infer that Defendant believed that Plaintiff's shift conflicted with his religious observance and denied his request for accommodation any way.  Therefore, it cannot be said that Defendant denied Plaintiff's request for the day off because Plaintiff personally preferred to be off all day.

More importantly, the Court holds that Plaintiff has adduced evidence that his desire to have the entire day off for Easter was a protected religious observance, not simply a personal preference.  The Supreme Court has counseled that "it is no business of courts to say. . . what is a religious practice or activity."[24]  Nevertheless, the Supreme Court has described a "religious" belief entitled to constitutional or statutory protection as "not merely a matter of personal

---

[22] According to Plaintiff, his Easter service lasted from midnight until 3:45 A.M.  His regular Sunday shift at the hotel did not begin until 8:00 A.M.

[23] Goodwin Aff. (D.E. # 18-12) ¶ 3.

[24] *Fowler v. Rhode Island*, 345 U.S. 67, 70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953).

14

preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living."[25]  Therefore, First Amendment protection only attaches to beliefs rooted in religion, as opposed to purely secular beliefs or personal preferences.[26]  Put another way, an employee may be entitled to a reasonable accommodation for "all aspects of religious observance and practice, as well as belief."  However, any requested accommodation incidental to a religious observance, practice, or belief and not otherwise dictated by the employee's religion is more properly considered a personal preference.

For example, an employee's desire to make a religious pilgrimage is a protected observance entitled to accommodation; the employee's desire to make the pilgrimage, which could be made at any time, at a time of her own choosing is a matter of personal preference.[27]  Likewise, an employee's right to observe her Sabbath is a protected religious practice; however, her demand for additional time on Friday afternoons to make Sabbath preparations, which could be performed at any time prior to her Sabbath, was simply a personal preference.[28]  A protected

---

[25] *Wisconsin v. Yoder,* 406 U.S. 205, 215-16, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1971).

[26] *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. 707, 713, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981).

[27] *Tiano v. Dilliard Dep't Stores, Inc.*, 139 F.3d 679, 682-83 (9th Cir. 1998).  *See also Loftus v. Blue Cross Blue Shield of Michigan*, No. 08-13397, 2010 WL 1139338, at *5 (E.D. Mich. Mar. 24, 2010) (dismissing accommodation claim where Plaintiff's desire to travel to the Holy Land for six months was based on his personal preference rather than a religious obligation).

[28] *Dachman v. Shalala*, 9 F. App'x 186, **3-4 (4th Cir. 2003) (record showed that plaintiff could purchase Challah bread on Thursdays and cook and clean at times other than Friday afternoon).  *See also Wessling v. Kroger Co.*, 554 F. Supp. 548 (E.D. Mich.1982) (plaintiff's "social" and "family oriented" choice to volunteer with church Christmas pageant was personal preference, not religious compulsion, which did not impose duty on employer to accommodate plaintiff's request to leave work three hours prior to the time she was obliged to be

15

religious ritual such as a prescribed prayer hour is entitled to accommodation, yet an employee's request to travel to a preferred location not otherwise required for the prayers amounts to personal preference.[29]  In short, an employee's right to a reasonable accommodation, including the time, place, and manner of the accommodation, only covers matters dictated by religious practice, and not the employee's personal preference.

According to Plaintiff, the Russian Orthodox observance of Easter consisted not just of a church service but included a special blessing by the priest over the family Easter meal, the sharing of the meal, and prayer with family members.  Unlike the plaintiffs in the cases discussed above, Plaintiff in the case at bar has shown that the time and place of the observance was a matter of religious belief for him as a Russian Orthodox Christian, not just his personal preference.  For this reason, Defendant's contention that Plaintiff could have simply enjoyed his Easter meal after his shift is unavailing.  There is no evidence that Plaintiff requested the day off simply for the purpose of observing the holiday meal at his preferred time or for making personal preparations.  Instead Plaintiff has presented evidence that he wanted the day off to engage in religious rituals and practices dictated for that time and place by his own religious practice.  At the very least, Plaintiff's showing is enough to create a triable issue and survive summary judgment.[30]  Therefore, the Court concludes that Plaintiff can make out the first element of his

_____

at her church).

[29] *Hussein v. Hotel Employees & Rest. Union, Local No. 6*, No. 98 Civ. 9017, 2002 WL 10441, at *4 (S.D.N.Y. Jan. 3, 2002) (holding plaintiff's preference to perform congregational prayers at his home mosque, rather than one closer to his employer's place of business, was not protected by Title VII).

[30] *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378-79 (6th Cir. 1994).  *See also E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279

prima facie case.

**B.**          *Plaintiff Informed Defendant About the Conflicts*

The Court further holds that Plaintiff has shown that he informed Defendant about the conflict between his regular shift and his observance of the Russian Orthodox Easter holiday. The record before the Court indicates that Plaintiff discussed his request to have the day off for religious reasons with three different supervisors during the week before the holiday.  Plaintiff informed management that he wished to swap his Sunday, April 27, 2008 shift with another employee in order to observe the Easter holiday.  Defendant argues that Plaintiff cannot prove this element because Plaintiff never informed his supervisors about the conflict between his shift and the other religious content of his Easter celebration, specifically his need to share the Easter meal and time for pray with his family.  However, Defendant has not cited any authority for the proposition that Plaintiff's duty to inform required anything more than his request to have the day off for a religious observance.[31]  An employee need only notify his employer "of his need for a religious accommodation" in order to trigger the employer's obligation to reasonably

_____

F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved for the factfinder at trial, not for the court at summary judgment."); *Vetter v. Farmland Industries, Inc.*, 120 F.3d 749, 752-53 (8th Cir. 1997) ("The jury had the duty to determine whether Farmland's residence requirement interfered with the observance or practice of Vetter's religion or whether he chose to live elsewhere because of a purely personal preference.").

     [31] Defendant has cited two cases that appear to address only the elements of a prima facie case for religious accommodation: *Reed v. Int'l Union, United Auto, Aerospace, & Agr. Implement Workers of America*, 569 F.3d 576, 579 (6th Cir. 2009); and *Tepper*, 505 F.3d at 514. Neither case specifically addresses the issue presented: how much must an employee do to inform his employer of the conflict between his duties and his religion.

17

accommodate an employee's religious practices.[32]  Another court has described the duty to inform in this way:

> While the law does not require that a[n] employer divine the existence of a conflict or discern whether an accommodation is desired, there is no magic incantation required to put an employer on notice either.  It would be contrary to the purpose of the statute to permit a[n] employer to close his eyes to that which is obvious in favor of a rule requiring particular verbiage to trigger constitutional protection.[33]

An employee fails to inform his employer where the employee never mentions his need for a religious accommodation to a supervisor at all.[34]  Based on these principles, the Court holds that Plaintiff did not have a duty to divulge all of the details of the religious content of his Easter observance with his supervisors, only to advise Defendant that he needed the day off for religious reasons.  Therefore, the Court concludes that Plaintiff has shown that he adequately informed Defendant of his Sunday shift would conflict with his observance of the Easter holiday.

**C.   *Plaintiff Was Discharged For Failing to Comply with the Conflicting Employment Requirement***

The parties do not dispute that Plaintiff was discharged by Defendant for not reporting to work on Sunday, April 27, 2008, after management had denied his request to be off.  Plaintiff's

---

[32] 29 C.F.R. § 1605.2(c)(1).  *See also Averett v. Honda of America Mfg., Inc.* No. 07-cv-1167, 2010 WL 522826, at *10 (S.D. Ohio Feb. 9, 2010).

[33] *E.E.O.C. v. White Lodging Services Corp.*, No. 06-cv-353, 2010 WL 1416676, at *6 (W.D. Ky. Mar. 31, 2010).

[34] *Getachew v. BP North America Products, Inc.*, No. 04-cv-107, 2006 WL 278982, at *9 (S.D. Ohio Feb. 2, 2006) (employee never informed supervisor that he had religious objections to paying for a lottery ticket).

regular shift that day conflicted with his religious observance of the Russian Orthodox Easter holiday.  Defendant terminated Plaintiff's employment on April 30, 2008, for gross misconduct, namely, ignoring his supervisors' warnings that failure to come to work would be considered grounds for dismissal.  Therefore, Plaintiff can demonstrate that he was discharged for failing to comply with the conflicting employment requirement.

**D.    *Defendant has Failed to Show that Plaintiff's Requested Accommodation Created an Undue Hardship***

Once Plaintiff has established his prima facie case, the burden shifts to Defendant "to show that it could not reasonably accommodate the employee without undue hardship."[35]  The "reasonableness" of an accommodation is determined on a case-by-case basis.[36]  Indeed, the Sixth Circuit has noted that the question of reasonableness is best left to the trier of fact.[37]  "What may be a reasonable accommodation for one employee may not be reasonable for another."[38]  An undue hardship arises when an employer must "bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs."[39]  An employer need not actually undertake or

---

[35] *Tepper*, 505 F.3d at 514 (citations omitted).

[36] *E.E.O.C. v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) (citation omitted).

[37] *Id.* (quoting *Redmond v. GAF Corp.*, 574 F.2d 897, 902-03 (7th Cir.1978)).

[38] *Smith*, 827 F.2d at 1085 (citation omitted).

[39] *Tepper*, 505 F.3d at 514 (citations omitted).

attempt the accommodation to establish an undue hardship.[40]  At the same time, an employer has ongoing duty to reasonably accommodate an employee's religion even after an employer attempts to resolve the employee's religious conflict and fails.[41]  It is not enough for the employer to show that an "accommodation would be bothersome to administer or disruptive of the operating routine."[42]  Furthermore, an employer must present evidence to establish otherwise "speculative" or "hypothetical hardships" that could result from accommodations never attempted.[43]

Applying these principles to the facts of this case, the Court finds that Defendant has failed to prove that Plaintiff's requested accommodation would have resulted in an undue hardship.  It is undisputed that Defendant had accommodated Plaintiff's request to swap shifts with Underhill for his Easter observance in 2007.  It is also undisputed that Plaintiff's similar request in 2008 arose under markedly different circumstances.  Defendant persuasively argues that Underhill's special shift scheduled for the overnight hours between midnight Saturday, April 26, 2008, and early Sunday, April 27, would have imposed an undue hardship on Defendant. The record shows that had Underhill worked Plaintiff's Sunday shift, Underhill would have worked a total of almost twenty hours in a thirty-two hour span from 8:00 A.M. Saturday until 4:30 P.M. Sunday.  Defendant decided that this was too much to ask of Underhill even if he had agreed to cover the shift.  The Court finds that this scenario would have indeed created an undue hardship that would have rendered Plaintiff's request to have Underhill cover his Sunday shift

---

[40] *Id*.

[41] *Smith*, 827 F.2d at 1085 (citation omitted).

[42] *Id*.

[43] *Id*. at 1086.

unreasonable.[44]

Nevertheless, the Court is called on to consider the actual circumstances as they occurred, not just the facts as they were at the time Defendant made its initial determination. In this case, the circumstances changed, albeit at the eleventh hour, but in a way that removed Defendant's actual hardship, its concern about Underhill working so many hours in one weekend. For purposes of this Motion, the Court holds that Defendant has failed to show that it would have been an undue hardship to accommodate Plaintiff's request once the special project and Underhill's late-night shift were cancelled. Viewing the evidence in the light most favorable to Plaintiff, the project was postponed at some time Saturday evening forcing Defendant to contact Underhill and let him know that he no longer had to come in at midnight. Defendant argues,

> What Plaintiff fails to do, however, is to make any explanation of how the Peabody could have scrambled to inform him, while he was attending religious services at his Church all day on Saturday, that he was no longer needed to work on Sunday, and then – at the same time – managing to get a hold of Mr. Underhill to ensure that he could still fill in.[45]

The Court finds Defendant's contention unpersuasive. First, Defendant, and not Plaintiff, bears the burden to establish an undue hardship in this case. Second, there is no factual support in the record before the Court for the assertion that Plaintiff was at church "all day on Saturday."[46] Furthermore, a reasonable juror could conclude that when Defendant called to let Underhill know about the cancellation of his midnight shift, Defendant could have also asked Underhill to cover Plaintiff's Sunday shift. At that point Defendant would have needed to make an additional

---

[44] The Court notes that Defendant does not explain why Plaintiff could not have worked Underhill's Saturday shift and Underhill Plaintiff's Sunday shift.

[45] Def.'s Reply (D.E. # 27) 5.

[46] *See* Jiglov Depo. 143:5-144:2; 146:18-23.

telephone call to Plaintiff to grant him his day off.  Based on the fact that Defendant ended up calling Underhill in anyway and made the call to him around 6:00 A.M. Sunday morning, a reasonable juror could infer that Defendant had at least until 6:00 A.M. the following morning to contact Plaintiff.[47]  Thus, the "scramble" Defendant complains of involved one additional telephone call to Plaintiff, which Defendant had a period of hours to complete, a clearly *de minimis* burden.  There is no evidence before the Court that Defendant made this last minute attempt to accommodate Plaintiff's request.[48]  Therefore, the Court holds that Defendant has not shown that Plaintiff's requested accommodation would have created an undue hardship as a matter of law.

Defendant has argued that it could not have foreseen the last minute cancellation of the project, which is arguably true.[49]  Still, the cancellation of the project did not relieve Defendant of its ongoing duty to make a reasonable accommodation for Plaintiff.  Furthermore, Defendant has cited cases for the proposition that an employer need not actually experience the hardship in order to prove that the hardship was unreasonable.[50]  The Court finds those cases inapposite.

---

[47] It could also be inferred that it would not have been difficult for Defendant to make contact with Underhill.  Defendant actually was able to contact Underhill twice in the same time frame, once to tell him his midnight shift was cancelled and a second time to ask him to cover Plaintiff's shift.

[48] *Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 ("After failing to pursue this or any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably his religious needs without undue hardship on the conduct of its business.").

[49] Def.'s Memo. in Supp. (D.E. # 18-1), 13.  The parties disagree over when Defendant actually learned of the cancellation.

[50] *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508 (6th Cir. 2002) (citations omitted) ("We disagree with Plaintiff's argument because it has been found that an

Unlike the hardships in case at bar, the employer's hardship in *Virts* (and the cases on which *Virts* relies) were always speculative, that is, the employers in those cases foresaw *potential* hardships without ever actually incurring the hardship.  For example, in *Virts*, the employer denied the plaintiff's requested religious accommodation, assigning him male counterparts only for overnight trucking runs, in part because such an accommodation could potentially force the employer to violate seniority provisions of the collective bargaining agreement.[51]  In contrast, the hardships to Defendant here were actual, not speculative, at the time Plaintiff requested his day off.  The Court has found that the prospect of Underhill working twenty hours over the course of weekend was a real hardship.  The cancellation of the special project, however, removed any real hardships.  For these reasons the Court finds *Virts* distinguishable and Defendant's argument unpersuasive.

Having held that Plaintiff can make out a prima facie case for religious accommodation and that questions of fact remain about whether Defendant can show an undue hardship, Defendant's Motion for Summary Judgment is **DENIED** as to this issue.

## II.    Disparate Treatment

Plaintiff's second theory is that Defendant violated Title VII by treating him differently than other similarly situated employees on the basis of his religion.  Plaintiff may prove this

---

employer does not have to actually experience the hardship in order for the hardship to be recognized as too great to be reasonable.").

[51] *Virts*, 285 F.3d at 517-19 (rejecting the employee's assertion that the employer's undue hardship was "speculative").

claim through either direct or circumstantial evidence.[52]  In the absence of direct evidence of discrimination, Plaintiff must rely on the familiar *McDonnell Douglas* burden-shifting framework.[53]  In order to make his disparate treatment claim, Plaintiff must prove that (1) he is a member of a protected group; (2) he was subject to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated less favorably than a similarly-situated employee outside the protected class.[54]  If Plaintiff makes out his *prima facie* case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination.[55]  At that point, the burden shifts back to Plaintiff to prove that the proffered reason was merely a pretext for unlawful discrimination on the basis of Plaintiff's religion.[56]

The Court holds that Plaintiff has failed to make out his prima facie case as to his disparate treatment claim.  More specifically, Plaintiff cannot show that he was replaced by someone outside the protected class or that he was treated less favorably than similarly-situated persons outside of his protected class.[57]  Plaintiff has not shown that he was replaced by a worker outside of his protected class.  Instead, Plaintiff relies on two comparator employees, Antoinette

---

[52] *Hall*, 215 F.3d at 625-26.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

Anderson and Cindy Cobb.  However, Plaintiff has failed to show that these two employees were similarly situated to him.  In order to constitute similarly situated comparators, two employees must be similarly-situated in all *relevant* aspects of their respective employment circumstances.[58] In a case like the one at bar involving disciplinary action, Plaintiff must show that all *relevant* aspects of his employment situation were "nearly identical" to those of the comparison employee whom he alleges was treated more favorably.[59]  More specifically, the comparator employee (1) must have dealt with the same supervisor, (2) have been subject to the same standards, and (3) have engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[60]  These factors generally are *all* relevant considerations in cases alleging differential disciplinary action.[61]

The Court holds that Plaintiff cannot rely on Anderson and Cobb as comparator employees because Plaintiff was not similarly situated to them.  Plaintiff has failed to show that Anderson and Cobb reported to the same supervisor as Plaintiff, that they were subject to the same standards of conduct, or that they engaged in substantially the same conduct.  Plaintiff simply argues that Anderson and Cobb received progressive discipline from Defendant for their attendance problems; whereas, Plaintiff was dismissed after calling in one time.  However, Plaintiff has failed to carry his burden to adduce evidence from which a reasonable juror could

---

[58] *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

[59] *Id*. at 802.

[60] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

[61] *Id.* at 352.

conclude that Anderson and Cobb were employees similarly situated to Plaintiff.  Therefore, Defendant is entitled to summary judgment as to Plaintiff's disparate treatment claim.

<u>CONCLUSION</u>

Questions of fact remain concerning Plaintiff's prima facie case for religious accommodation and whether Plaintiff's requested accommodation would create an undue hardship for Defendant.  Accordingly, the Court holds that Defendant is not entitled to summary judgment as to this claim.  With respect to Plaintiff's disparate treatment claim, Plaintiff has failed to make his prima facie showing that he was treated differently than other similarly situated employees.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED IN PART, DENIED IN PART**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 18th, 2010.

26